HUDSON *v*. STATE.

(Division A.   May 15, 1939.)

[188 So. 561.   No. 33554.]

678

R. L. Pullen and Richard B. Booth, both of Aberdeen, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the State.

**McGowen, J.,** delivered the opinion of the court.

Hudson, the appellant, was tried on an indictment for murder in the killing of Clebert Mangrum, and was convicted by the jury which a recommendation for a life sentence in the penitentiary. A motion for a new trial was overruled and final judgment entered, whereby appellant was sentenced to the penitentiary for life.

We deem it unnecessary to detail all of the facts of this case. It is sufficient to say that a dispute arose between the deceased and the appellant as to the length of time which the deceased had drawn for labor performed by him for the appellant in Vaughn's Store in the Village of Hatley. Thereafter, the deceased was sitting in the store of Ford, connected with a filling station, and Hudson came in and renewed the quarrel. The evidence for the State tended to show that the appellant was drinking and under the influence of whiskey, and that deceased said to him, in effect, "If you don't leave me alone I will slap Hell out of you." Thereafter, Hudson retired from the store, and when he reached the door invited the deceased to come outside and settle it; and one witness testified that he (Hudson) at that time opened his knife and placed it in his pocket. Shortly thereafter, the deceased went to the door and approached appellant, placing his right hand on his shoulder, his left hand containing no weapon, and in that position, the testimony for the State shows, the appellant stabbed the deceased, with a knife, from which wound the deceased died in a very

short time. The State's witnesses swore that the deceased made no demonstration, and had nothing in either hand.

The appellant's testimony, as a witness for himself, was to the effect that at the moment he stabbed the deceased, the latter had a knife in his left hand and was making a demonstration toward him, and that he was not mad but stabbed the deceased in order to protect his own life. He admitted that he had taken the knife out of his pocket a short time before he stabbed him, but did not deny that at that time he opened it. There was evidence that the deceased had threatened the appellant before the date of this occurrence. These threats were not communicated.

To sum up the evidence, there was ample testimony to warrant the jury in finding the appellant guilty of murder. On the other hand, there was evidence upon which the jury might have acquitted the defendant on his self-defense plea.

The Court granted the following instruction for the State: ''The Court charges the jury for the State that malice aforethought, mentioned in the indictment, does not have to exist in the mind of the slayer for any given length of time; and if at the very moment of the fatal stabbing, the defendant, Jim Hudson, cut with the deliberate design to take the life of Clebert Mangrum, and not in necessary self-defense, real or apparent, then it was as truly malice and the act was as truly murder as if the deliberate design had existed in the mind of the defendant for minutes, hours, days, weeks, or even years.''

The only other instruction given for the State was a statutory definition of murder, in which the jury was informed that if it believed from the evidence in the case, beyond a reasonable doubt, that the defendant, Jim Hudson, so killed Clebert Mangrum, then they should find the defendant guilty as charged, and should return either of the following statutory verdicts.

The defendant's instructions set forth fully the law of self-defense, and the required requisite burden of proof. Among the numerous instructions granted the defendant was this one: "The Court instructs the Jury for the Defendant: That you must either find the defendant guilty of murder or find him not guilty."

On the motion for a new trial, it was alleged therein that a deputy sheriff, who summoned two jurors after the venire was exhausted, was prejudiced and biased, had taken an active part in the prosecution, and was a witness for the State. The motion for a new trial was not accompanied by an affidavit of the counsel for the appellant that they did not know of these facts at or before the trial began, neither was there an affidavit on the part of the defendant. There was testimony offered on the motion, but neither counsel nor the defendant were offered as witnesses.

(1) It is suggested that the verdict of the jury is against the overwhelming weight of the evidence. We do not think that there is any merit in this contention. There was ample evidence to warrant the jury in finding the defendant guilty of murder.

(2) It is next contended that the instruction granted the State was erroneous and reversible error. The contentions of appellant being that the instruction complained of erroneously defined "malice aforethought;" that the verdict of the jury was against the overwhelming weight of the evidence; that it improperly limited self-defense to the moment of the killing; that it failed to include therein the phrase that "the jury must believe from the evidence in the case beyond a reasonable doubt;" and that it eliminated from the jury the right of defendant to have it consider the question of whether or not he stabbed the deceased in the heat of passion.

We do not think there is any merit in any of the contentions but in so far as the instruction eliminates manslaughter from the consideration of the jury, we have only to point to the instruction which we have quoted at

length, by which the defendant procured the court to grant him an instruction eliminating manslaughter from the trial. In other words, the appellant and his counsel decided to pitch the issue upon murder or self-defense. In such situation, the appellant cannot be heard to complain of the instruction in this behalf. We express no opinion as to whether or not manslaughter was eliminated, but call attention to the fact that the appellant, as a witness for himself, did not deny that he opened his knife a few moments in advance of the fatal encounter between him and his antagonist.

(3) On the motion for a new trial, it was alleged that the appellant was prejudiced by the manner in which two talesmen were summoned for the trial by the deputy sheriff. In Hilbun v. State, 167 Miss. 725, 148 So. 365, 366, this Court stated the following proposition: "On a motion for a new trial based on facts not known during the trial, both the defendant and his attorneys must make affidavit, or testify under oath, that they were ignorant of such facts during the trial. Grady v. State, 158 Miss. 134, 130 So. 117; Salmon v. State, 151 Miss. 539, 118 So. 610; Queen v. State, 152 Miss. 723, 120 So. 838; Lipscomb v. State, 76 Miss. 223, 25 So. 158; Brown v. State, 60 Miss. 447; Harris v. State, 61 Miss. 304; Long v. State, 163 Miss. 535, 141 So. 591." In compliance with the well recognized and a well established rule in this Court, we cannot consider this assignment of error. See Carter v. State, 167 Miss. 331, 145 So. 739; Magee v. State, 154 Miss. 671, 122 So. 766, and authorities therein cited.

We find no reversible error in this record.

Affirmed.